**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MICHAEL J. EHRHARDT,** | § | FILED: JULY 28, 2008 |
| **THOMAS J. POTTER,** | § | 08CV4267 |
| **NICHOLAS R. TUBERVILLE,** | § | JUDGE SHADUR |
| **ERIC O. LOYD,** | § | MAGISTRATE JUDGE VALDEZ |
| **KATHRYN A. SKINNER,** | § | YM |
| **RYAN B. WHITE,** | § | |
| **DAVID H. SINK,** | § | |
| **JDR TRANSPORTATION, INC. and** | § | |
| **S & J OF NORTH FLORIDA, INC.,** | § | **Case No. _____** |
| **individually and on behalf of all** | § | |
| **similarly situated persons and** | § | |
| **entities,** | § | |
| | § | **CLASS ACTION COMPLAINT** |
| **Plaintiffs** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **vs.** | § | |
| | § | |
| **CHAMPION LABORATORIES, INC.,** | § | |
| **UNITED COMPONENTS, INC.,** | § | |
| **PUROLATOR FILTERS N.A., LLC,** | § | |
| **BOSCH U.S.A.,** | § | |
| **MANN+HUMMELL U.S.A.,** | § | |
| **ARVINMERITOR, INC.,** | § | |
| **HONEYWELL INTERNATIONAL,** | § | |
| **WIX FILTRATION CORP., LLC,** | § | |
| **CUMMINS FILTRATION, INC.,** | § | |
| **THE DONALDSON COMPANY and** | § | |
| **BALDWIN FILTERS, INC.,** | § | |
| | § | |
| **Defendants** | § | |

Plaintiffs Michael J. Ehrhardt, Thomas J. Potter, Nicholas R. Tuberville, Eric O. Loyd,

Kathryn A. Skinner, Ryan B. White, David H. Sink, JDR Transportation, Inc. and S & J of North

Florida, Inc. (collectively, the "Plaintiffs"), individually and on behalf of all similarly situated

indirect purchasers in the Classes defined below, bring this action for (i) injunctive relief under

Section 1 of the Sherman Act, (ii) damages and other relief under the antitrust and/or consumer

protection laws of the States of Michigan, Iowa, Arkansas, North Carolina, West Virginia, Utah,

Rhode Island and Florida, and (iii) restitution and/or the disgorgement of profits for unjust enrichment under Michigan, Iowa, Arkansas, North Carolina, West Virginia, Utah, Rhode Island and Florida common law against Defendants Champion Laboratories, Inc., United Components, Inc., Purolator Filters N.A., LLC, Bosch U.S.A., Mann+Hummell U.S.A., ArvinMeritor Inc., Honeywell International, Wix Filtration Corp., LLC, Cummins Filtration Inc., The Donaldson Company and Baldwin Filters, Inc. (collectively, the "Defendants").

The allegations herein are based, in part, on recorded conversations and the personal knowledge of, and information provided by, a senior sales executive who was employed by two of the Defendants during the Class Period (as defined below).  Plaintiffs respectfully allege the following:

## NATURE OF THE ACTION

1.      This action arises out of a conspiracy by, between and among the Defendants, who collectively are the leading manufacturers of replacement vehicle oil, gas, transmission and air filters (hereafter collectively referred to as "Filters") to fix, raise, maintain and/or stabilize the prices of Filters, and allocate customers for Filters, in Michigan, Iowa, Arkansas, North Carolina, West Virginia, Utah, Rhode Island, Florida and throughout the United States.

2.      During the Class Period, Defendants and their co-conspirators exchanged confidential pricing material and conspired at industry events and elsewhere to fix, raise, maintain and/or stabilize the prices of Filters, and allocate customers for Filters, in Michigan, Iowa, Arkansas, North Carolina, West Virginia, Utah, Rhode Island, Florida and throughout the United States.

3.      As a result of Defendants' unlawful conduct, Plaintiffs and the members of the Classes defined below paid artificially inflated prices for replacement vehicle oil, gas, transmission and air filters and, as a result, suffered injury to their business and property.

2

4.     Plaintiffs bring this action on behalf of all persons and entities in the Classes defined below who purchased replacement vehicle oil, gas, air and transmission filters indirectly from any Defendant at any time, from January 1, 1999 through the present (the "Class Period").

## JURISDICTION AND VENUE

5.     This action is instituted under Section 16 of the Clayton Act, 15 U.S.C. § 26, for injunctive relief for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, to recover actual, statutory and/or punitive damages under state antitrust and consumer protection laws, costs of suit, reasonable attorneys' fees and litigation expenses for the injuries sustained by Plaintiffs and all other similarly situated persons and entities as a result of Defendants' wrongful conduct and violations of the law.

6.     This Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 1331 and 1337. This Court also has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. § 1367, because such claims are so related to the federal law claims that they form part of the same case or controversy. This Court also has diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332(d), because the amount in controversy exceeds $5,000,000 USD and Plaintiffs and the members of each of the Classes are citizens of different states than those of Defendants.

7.     This Court also has personal jurisdiction over each Defendant because, *inter alia*, during the Class Period, each Defendant: (i) transacted business throughout the United States, including the Northern District of Illinois, (ii) manufactured, sold shipped and/or delivered substantial quantities of replacement vehicle oil, gas, transmission and air filters throughout the United States, including the Northern District of Illinois, (iii) had substantial contacts with the United States, including the Northern District of Illinois and/or (iv) was engaged in an illegal scheme and price-fixing conspiracy that was directed at, and had the intended effect of causing

injury to, persons residing in, located in or doing business throughout the United States, including the Northern District of Illinois.

8.    Venue is proper in the Northern District of Illinois, pursuant to 15 U.S.C. §§ 22 and 28 and 28 U.S.C § 1391, because during the Class Period, Defendants resided, transacted business, were found or had agents in the Northern District of Illinois, and a substantial portion of the affected interstate trade and commerce described below occurred in the Northern District of Illinois.

## THE FILTERS AT ISSUE IN THIS CASE

9.    The term "Filters" as used in this Complaint refers to aftermarket replacement vehicle oil, gas, transmission and air filters manufactured and/or sold by Defendants. Replacement Filters typically are disposable and require regular replacement.

10.   Replacement Filters remove particles that either increase wear and tear on an engine or transmission and/or decrease the efficiency of an engine or transmission. Oil, gas and transmission filters remove harmful particles in the corresponding engine fluids. Air filters are the main shield against dust and other particulate matters that are sucked into a vehicle's engine.

11.   Filter manufacturers, such as Defendants, sell Filters to new vehicle manufacturers and "aftermarket" wholesalers and retailers who, in turn, resell the Filters to vehicle repair shops, lube shops and individual consumers for installation. Annual revenues for Filters are approximately $3-5 billion in the United States. Defendants are the primary manufacturers of Filters in the United States, to which the allegations in this Complaint are limited.

## PLAINTIFFS

12.     Plaintiff Michael J. Ehrhardt ("Ehrhardt") is a citizen and resident of Waterford, Michigan.  During the Class Period, Ehrhardt purchased Filters in Michigan indirectly from one or more of the Defendants.

13.     Plaintiff Thomas J. Potter ("Potter") is a citizen and resident of Sterling, Illinois. During the Class Period, Potter purchased Filters in Iowa indirectly from one or more of the Defendants.

14.     Plaintiff Nicholas J. Tuberville ("Tuberville") is a citizen and resident of Camden, Arkansas.  During the Class Period, Tuberville purchased Filters in Arkansas indirectly from one or more of the Defendants.

15.     Plaintiff Eric O. Loyd ("Loyd") is a citizen and resident of Siler City, North Carolina. During the Class Period, Loyd purchased Filters in North Carolina indirectly from one or more of the Defendants.

16.     Plaintiff Kathryn A. Skinner ("Skinner") is a citizen and resident of Charles Town, West Virginia.  During the Class Period, Skinner purchased Filters in West Virginia directly from one or more of the Defendants.

17.     Plaintiff Ryan B. White ("White") is a citizen and resident of Holladay, Utah.  During the Class Period, White purchased Filters in Utah indirectly from one or more of the Defendants.

18.      Plaintiff David H. Sink ("Sink") is a citizen and resident of Provo, Utah.  During the Class Period, Sink purchased Filters in Utah indirectly from one or more of the Defendants.

19.     Plaintiff JDR Transportation, Inc. ("JDR") is a Rhode Island corporation with its principal place of business in Attleboro, Massachusetts.  During the Class Period, JDR purchased Filters in Rhode Island indirectly from one or more of the Defendants.

20.     Plaintiff S & J of North Florida, Inc. ("S & J") is a Florida corporation with its principal place of business in Tallahassee, Florida.  During the Class Period, S & J purchased Filters in Florida indirectly from one or more of the Defendants.

## DEFENDANTS

21.     Defendant Champion Laboratories, Inc. is a corporation with its headquarters and principal place of business at 200 S. Fourth St., Albion, IL 62806.  During the Class Period, Champion Laboratories, Inc. manufactured and sold (and continues to manufacture and sell) Filters in the United States under different brand names including, *inter alia*, Champ, Encore, Imperial, Kleener, Luber-finer, MXM, Petro Clear, Roughneck, TotalTec, United Components and Z Guard. Champion Laboratories, Inc. is a wholly-owned subsidiary of Defendant United Components, Inc.

22.     Defendant United Components, Inc. is a corporation with its headquarters and principal place of business at 14601 Highway 41 N., Evansville, IN 47725-9357.  United Components, Inc. is the parent corporation of Defendant Champion Laboratories, Inc.  Champion Laboratories, Inc. and United Components Inc. together will be referred to as "Champion."

23.     Defendant Purolator Filters N.A., LLC is a limited liability company with its headquarters and principal place of business at 3200 Natal St., Fayetteville, NC 28306-2845.  During the Class period, Purolator Filters N.A., LLC manufactured and sold (and continues to manufacture and sell) Filters in the United States under different brand names including, *inter alia,* Purolator and Promoter.  Purolator Filters N.A., LLC is a joint venture between Defendants Bosch U.S.A. and Mann+Hummel U.S.A., Inc.

24.     Defendant Bosch U.S.A. is a corporation with its headquarters and principal place of business at 38000 Hills Tech Drive, Farmington Hills, MI 48331.

25.     Defendant Mann+Hummell U.S.A. is a corporation with its headquarters and principal place of business at 6400 S. Sprinkle Road, Portage, MI 49002.

26.     Defendant ArvinMeritor Inc. is a corporation with its headquarters and principal place of business at 2135 West Maple Road, Troy, MI 48084.  Prior to April 2006, Purolator Filters N.A., LLC was owned by ArvinMeritor Inc.  Defendants Purolator Filters N.A., LLC, Bosch U.S.A., Mann+Hummel U.S.A. and ArvinMeritor Inc. collectively will be referred to as "Purolator."

27.     Defendant Honeywell International ("Honeywell") is a corporation with its headquarters and principal place of business at 100 Columbia Road, Morristown, NJ 07962.  During the Class Period, Honeywell manufactured and sold (and continues to manufacture and sell) Filters in the United States.  Honeywell International Consumer Products Group is a division of Honeywell headquartered in Danbury, Connecticut that is responsible for the manufacture and sale of Filters, principally under the FRAM brand name.

28.     Defendant Wix Filtration Corp., LLC ("Wix") is a limited liability company with its headquarters and principal place of business at One Wix Way, Gastonia, NC 28054.  During the Class Period, Wix manufactured and sold (and continues to manufacture and sell) Filters in the United States.

29.     Defendant Cummins Filtration, Inc. ("Cummins") is a wholly-owned subsidiary of Cummins Inc., with its headquarters and principal place of business at 2931 Elm Hill Pike, Nashville, TN 37214.  During the Class Period, Cummins manufactured and sold (and continues to manufacture and sell) Filters in the United States under different brand names including, *inter alia*, Fleetguard.

30.     Defendant The Donaldson Company ("Donaldson") is a corporation with its headquarters and principal place of business at 1400 West 94th St., Minneapolis, MN 55431.

During the Class Period, Donaldson manufactured and sold (and continues to manufacture and sell) Filters in the United States.

31.     Defendant Baldwin Filters, Inc. ("Baldwin") is a corporation with its headquarters and principal place of business at 4400 E. Hwy 30, Kearney, NE 68848-6010.  During the Class Period, Baldwin manufactured and sold (and continues to manufacture and sell) Filters in the United States.

32.     Defendants Champion, Purolator, Honeywell, Wix, Donaldson, Cummins and Baldwin collectively will be referred to as "Defendants."

**CO-CONSPIRATORS**

33.     Various other persons, firms and corporations, not named as Defendants herein, participated as co-conspirators with Defendants and performed acts and made statements in furtherance of the conspiracy.  Each Defendant and yet-to-be-named co-conspirator acted as the agent or joint venturer of or for other Defendants and yet-to-be-named co-conspirators with respect to the acts, violations and common course of conduct alleged by Plaintiffs.

34.     Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

**CLASS ACTION ALLEGATIONS**

35.     For purposes of injunctive relief, Plaintiffs bring this action as a class action, pursuant to Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and all members of the following Class:

All persons and entities residing in the United States who, from January 1, 1999 through the present, purchased aftermarket replacement vehicle oil, gas, transmission and air filters indirectly from any Defendant.

36.    Plaintiffs also bring this action as individual state class actions, pursuant to Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure and/or the following states' respective state statute(s), on behalf of themselves and all similarly situated persons and entities in Michigan, Iowa, Arkansas, North Carolina, West Virginia, Utah, Rhode Island and Florida (collectively, the "Indirect Purchaser State Classes"), with respect to claims under the antitrust and/or consumer protection statutes of each of those jurisdictions and under such jurisdictions' common law principles of unjust enrichment:

All persons and entities residing in Michigan, Iowa, Arkansas, North Carolina, West Virginia, Utah, Rhode Island and Florida who, from January 1, 1999 through the present, purchased replacement vehicle oil, gas, transmission and air filters indirectly and for end use from any Defendant.

The Indirect Purchaser State Classes are confined to indirect purchasers of Filters manufactured or sold by one or more of the Defendants for such purchaser's own use, whether as a discrete purchase from a retailer or as part of a bundle of parts and services.

37.    Excluded from each of the Classes are the Court and Court personnel, all governmental entities and any of the Defendants and/or their parent corporations, subsidiaries, affiliates, officers, directors, agents, employees and/or representatives.

38.    Plaintiffs do not know the exact number of members in each Class because such information is in Defendants' exclusive control.  However, due to the nature of the trade and commerce involved, Plaintiffs believe that there are thousands of members of each of the Classes described above. Each of the Classes is so numerous and geographically dispersed that joinder of all members of each Class is impracticable.

39.    The following questions of law and fact are common to each of the Classes:

a.  Whether Defendants and their co-conspirators engaged in a combination and conspiracy by, between and among themselves to fix, raise, maintain and/or stabilize prices of Filters and/or allocate customers of Filters;

b.  The identity of the participants of the alleged conspiracy;

c.  The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

d.  Whether the alleged conspiracy violates Section 1 of the Sherman Act, 15 U.S.C. § 1;

e.  Whether the alleged conspiracy violates the antitrust, unfair competition and/or consumer protection laws of Michigan, Iowa, Arkansas, North Carolina, West Virginia, Utah, Rhode Island and/or Florida;

f.  Whether the alleged wrongful conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiffs and the members of the Classes;

g.  The effect of the alleged conspiracy on the prices of Filters sold in Michigan, Iowa, Arkansas, North Carolina, West Virginia, Utah, Rhode Island, Florida and throughout the United States during the Class Period;

h.  Whether Defendants have been unjustly enriched at the expense of Plaintiffs and the members of the Classes;

i.  Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the other members of the Class; and

j.  The appropriate class-wide measure of damages.

40.    Plaintiffs will fairly and adequately protect the interests of each of the Classes in that Plaintiffs have no interests that are antagonistic to other members of the Classes and Plaintiffs have retained counsel competent and experienced in the prosecution of antitrust and class action litigation.

41.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

42.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

43.     A class action is superior to all other available procedural methods for the fair and efficient adjudication of this controversy.  The Classes are readily identifiable.  Prosecution as a class action will eliminate the possibility of repetitious litigation.  Treatment as a class action will permit a large number of similarly situated persons and entities to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender.

44.     This action presents no management difficulties that would preclude its maintenance as a class action.  After determining the above predominating common issues of law and fact, if necessary or appropriate, the Classes can be divided into logical and manageable subclasses.

## NATURE OF THE INDUSTRY

45.     The Filters market is highly susceptible to cartel activity due to a number of factors including, *inter alia*, market concentration, the commodity nature of Filters (including both interchangeability and price as the primary driver of sales), barriers to entry, inelastic demand and lack of product substitutability.

46.     A high degree of concentration facilitates the operation of a cartel because it is easier to coordinate behavior among possible co-conspirators and more difficult for customers to avoid the effects of collusive behavior.  The Filters market is highly concentrated since Defendants control 90% of the sales of all Filters manufactured and sold in the United States.

47.     Filters are inter-exchangeable, undifferentiated products. All Filters must undergo Society of Automotive Engineers (SAE) testing to ensure that they meet vehicle manufacturers'

specifications.  An industry report notes that vehicle manufacturers utilize a small number of oil filters to cover all of their engine applications.  Thus, there are fewer part numbers in the Filters line than other aftermarket automotive products.

48.     Price is the key driver of Filters sales.  According to an industry report, direct purchasers surveyed for the report consider price to be the most important factor in their Filters purchases.

49.     The presence of significant barriers to entry makes new entry by other manufacturers difficult and, as a result, further facilitates the operation of a cartel.  Significant barriers to entry exist in the Filters market due to the need for significant start-up capital expenditures, initial product depth within a product line, distribution infrastructure and long-standing customer relationships.

50.     There also is significant evidence that demand for Filters is inelastic; in other words, demand does not change in the face of price changes. It is well established economic principle that goods comprising a small share of consumer expenditures exhibit inelastic demand because consumers are less likely to change consumption patterns when an absolute price increase is limited. Because vehicle manufacturers either require or strongly encourage Filter changes at specific intervals in order, for example, to maintain their vehicles and/or vehicle warranties, the members of the Classes did not decrease their use of Filters when prices increased because Filters are a small part of the cost of owning and maintaining a vehicle.

51.     There are no reasonable substitutes for Filters. Vehicle owners have little choice but to replace their Filters because they tend to wear out over time and are necessary for the maintenance and operation of their vehicles.

## TRADE AND INTERSTATE COMMERCE

52.    The activities of Defendants and their co-conspirators, as described in this Complaint, were within the flow of, and substantially affected, interstate commerce.

53.    During the Class Period, Defendants and their co-conspirators manufactured, sold and shipped substantial quantities of Filters in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which the Defendants produced these products.

54.    Filter manufacturers, such as Defendants, sell Filters to new vehicle manufacturers and "aftermarket" wholesalers and retailers who, in turn, resell the Filters to vehicle repair shops, lube shops and individual consumers for installation.  Annual revenues for Filters are approximately $3-5 billion in the United States.  Defendants are the primary manufacturers of Filters in the United States.

55.    The conspiracy in which the Defendants and their co-conspirators participated had a direct, substantial and reasonably foreseeable effect on United States commerce.

56.    For example, Defendant Honeywell estimated in 2007 that there were 217 million cars on the road in the United States.  Most car manufacturers recommend that car owners replace the oil filter at every oil change.  NAPA recommends that a car owner replace the air filter once a year or every 15,000 miles.  Thus, for most vehicles on the road today, the owners replace their vehicle's oil filter multiple times a year and air filters approximately once a year.

57.    Changing the Filters is imperative to maximize a vehicle's useful life and performance. As such, there are no alternatives to Filters.  According to a car care site, "next to changing your oil and oil filter, replacing your air and fuel filters on a regular basis is the single most important act of maintenance you can perform for your engine."

58.　　Because of the recommended maintenance intervals, oil changes are the automotive aftermarket's number one service and, therefore, oil filters are the aftermarket's highest volume replacement part.

59.　　During the Class Period, Plaintiffs and the members of the Classes paid supra-competitive prices for Filters.  These inflated prices were passed on to them by manufacturers, distributors and retailers.

60.　　The Filters aftermarket is organized around two groups of direct purchasers; to wit (i) those that buy Filters to install Filters into vehicles as a service to vehicle owners, and (ii) retailers and distributors who, in turn, sell Filters to two segments: the do-it-yourself group, or DIY group, who install Filters into their own vehicles, and the do-it-for-me retailers, or DIFM group, who install Filters into vehicles as a service to vehicle owners.

61.　　The DIY group is supplied primarily through retailers and distributors, such as Advance Auto Parts, AutoZone, Wal-Mart and/or O'Reilly Auto Parts.  According to O'Reilly Auto Parts Co-President, Greg Henslee, in 2007 the top ten retailers to the DIY and wholesale DIFM market sold approximately 40% of all Filters sold in the United States.

62.　　The DIY group of indirect purchasers of Filters for their own use are members of the Classes defined above.

63.　　These same large retailers and others also sell Filters to businesses that install the Filters into their customers' vehicles as part of a packaged oil change contract (*i.e.*, the DIFM group).  The end-consumers of Filters purchased as part of such packaged parts and services are members of the Classes defined above.

64.     Thus, end users of Filters, either as purchasers of Filters independently (DIY) or as part of a package that includes both parts and services (DIFM), are members of the Classes defined above.

65.     The conspiratorial conduct of the Defendants and their co-conspirators, the purpose of which was to raise the prices of Filters, directly increased the price of the Filters sold to indirect purchasers, such as Plaintiffs and the members of the Classes.  As two noted antitrust scholars – Professors Robert G. Harris (Professor Emeritus and former Chair of the Business and Public Policy Group at the Haas School of Business at the University of California at Berkeley) and Lawrence A. Sullivan (Professor of Law Emeritus at Northwestern Law School and author of the Handbook of the Law of Antitrust) – have observed, "in a multiple-level chain of distribution, passing on monopoly overcharges is not the exception; it is the rule."

66.     The pass-through of the overcharges to Plaintiffs and the members of the Classes who purchased Filters as part of a service package that included both parts and services are both identifiable and quantifiable.  Because each state requires the DIFM provider to collect sales tax on the sale of Filters, each retailer, by law, must break out the charges for the Filters.  Such charges may be itemized on a sales receipt or kept internally by the retailer for purposes of calculating its sales tax collection and payment obligations.

## FACTUAL ALLEGATIONS

67.     During the Class Period, Defendants and their co-conspirators conspired, contracted and/or combined to fix, raise, maintain and/or stabilize prices, rig bids and allocate customers for Filters in the United States.  Defendants conspired in face-to-face meetings, at industry trade shows and through the exchange of confidential price lists.

68.     Defendants extinguished the market forces of competition to their mutual benefit. Consumers, including Plaintiffs and the members of the Classes, were (and continue to be) injured by paying supra-competitive prices for Filters.

69.     Because Defendants control the market for Filters, there are virtually no choices for consumers who require such products other than buying Filters from entities that pay supra-competitive prices to Defendants because of Defendants' unlawful agreement alleged herein.

70.     The purpose of Defendants' unlawful conspiratorial meetings was to ensure that all Defendants participated in, and implemented, the price-fixing scheme.

71.     As a result of their unlawful agreement, Defendants implemented at least three coordinated price increases, distributed rigged bids and allocated customers for Filters during the Class Period.

72.     In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in a multitude of anticompetitive activities including, *inter alia*:

      a.     Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile, electronic mail and/or instant messaging or texting regarding the sale of Filters;

      b.     Agreeing to charge specific prices for Filters, allocate customers and otherwise fix, increase, maintain and/or stabilize the prices of Filters sold in the United States;

      c.     Agreeing not to compete for one another's customers by, among other things, not submitting prices or bids to certain customers or by submitting intentionally high prices or bids to certain customers;

      d.     Selling Filters to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to their unlawful agreement;

      e.     Accepting payment for Filters sold in the United States and elsewhere at collusive and non-competitive prices;

      f.     Communicating with one another to discuss the prices, customers, markets, and price levels of Filters sold in the United States;

g.      Authorizing or consenting to the participation of employees in the conspiracy; and

h.      Concealing the conspiracy and conspiratorial contacts through various means.

73.     At least as early as 1999, Defendants and their co-conspirators had numerous confidential discussions with each other and exchanged extensive communications regarding Filters pricing and customers.  Their conspiratorial conduct resulted in the unlawful agreement to fix, raise, maintain and/or stabilize prices, rig bids and allocate customers for Filters in the United States.

74.     As but one example, on June 28, 1999, a Purolator senior executive faxed to his counterpart at Honeywell a letter announcing a six percent (6%) price increase on all Purolator-branded Filters, effective on August 15, 1999.  Purolator did not notify its customers of the increased prices until more than two weeks later on July 14, 1999.

75.     Defendants also had face-to-face meetings regarding their respective contemplated price increases.  One or more of these meetings took place in May 1999 at the Heritage Show in Nashville, Tennessee, a regular meeting of members of the Filters industry.  At this and other meetings, Defendants agreed to raise Filter prices, which they subsequently did.

76.     At a meeting of its sales representatives in February 2004, Champion's President informed the sales team of Champion's proposed price increase and instructed them to make sure Champion's competitors followed suit in terms of timing and amount pursuant to their continuing agreement.  Champion sales representatives followed the directive and met with Defendants' representatives to further the conspiracy.

77.     Defendants engaged in continuous and ongoing face-to-face meetings to further their anticompetitive activities.  Many of these meetings occurred at the annual Filter Council meeting

held in Nashville, Tennessee, which was used as a vehicle to further the anticompetitive purposes of Defendants' unlawful conspiracy.

78.    In a 2004 internal company email, under the subject line "Price Increase," Champion confirmed that the other Defendants were "on board" with the amount of a coordinated price increase.

79.    Pursuant to their unlawful agreement, Defendants instituted similar price increases for Filters during the Class Period, including in 1999, early 2004 and late 2004/early 2005. These price increases were approximately 4-6% each.

80.    On July 18, 2008, the Department of Justice ("DOJ") acknowledged that it recently opened a criminal price fixing investigation of the Filters industry. On that same date, Honeywell acknowledged in a regulatory filing that the DOJ subpoenaed documents and information from Honeywell, certain of its employees and certain employees of some of the other Defendants.

81.    Defendants' conduct during the Class Period in collusively fixing, increasing, maintaining and/or stabilizing prices, rigging bids and allocating customers was for the sole purpose of foreclosing price competition in order to maintain artificially high prices for their Filters.

82.    By coordinating their pricing activities and allocating customers, Defendants removed from Plaintiffs the ability to constrain Defendants' pricing by moving (or threatening to move) their Filters business from one Defendant to another in response to price increases.

83.    Absent their coordinated activity, Defendants would have been forced to price Filters competitively or risk losing the significant business of their Filters customers (*i.e.*, Plaintiffs and the members of the Classes). With unrestrained competition, Defendants would have been forced to forego their price increases altogether, implement smaller price increases, or even decrease their prices in order to retain customers.

84.     As a result of Defendants' unlawful conspiracy, Plaintiffs and the members of the Classes were (and continue to be) forced to pay supra-competitive prices for Defendants' Filters.

## **FRAUDULENT CONCEALMENT**

85.     Throughout the Class Period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct by, *inter alia*, engaging in secret meetings and communications in furtherance of their conspiracy while holding themselves out to the public and their customers, including Plaintiffs and the members of the Classes, as true competitors.

86.     Plaintiffs and the members of the Classes did not discover, nor could have discovered through reasonable diligence, that Defendants and their co-conspirators were violating the antitrust laws until shortly before this litigation was commenced because Defendants and their co-conspirators used (and continue to use) deceptive and secret methods to avoid detection and affirmatively conceal their violations.  Nor could Plaintiffs or the members of the Classes have discovered the violations earlier than that time because Defendants and their co-conspirators conducted their conspiracy secretly, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection.

87.     Defendants concealed their unlawful conspiracy in several ways including, *inter alia*, public announcements that the price increases were due to the increased price of steel and that Defendants were simply meeting their competitors' price increases.  As a result of Defendants' active concealment of their conspiracy, any and all statutes of limitation applicable to the allegations herein are tolled.

## CLAIMS ANDCAUSES OF ACTION

### COUNT I

## VIOLATION OF § 1 OF THE SHERMAN ACT

88.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

89.     Beginning at least as early as January 1, 1999, and continuing thereafter through the present, the exact dates being unknown to Plaintiffs, Defendants contracted, combined and/or conspired to fix, raise, maintain and/or stabilize prices, rig bids and allocate customers of Filters in the United States, the purpose and effect of which is to maintain supra-competitive prices for their Filters.  This conspiracy is *per se* illegal under Section 1 of the Sherman Act, 15 U.S.C. § 1.

90.     The Defendants' conspiracy consists of a continuing understanding and concert of action by, between and among Defendants to coordinate their Filter prices.

91.     The Defendants' conspiracy has foreclosed and restrained competition by and between Defendants, thereby causing Plaintiffs and the members of the Classes to pay artificially high prices for Defendants' Filters.

92.     As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged herein, Plaintiffs and the members of the Classes have been (and continue to be) injured in their business and property.  Defendants' wrongful conduct, therefore, should be enjoined.

### COUNT II

## VIOLATION OF STATE ANTITRUST STATUTES

93.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

94.    During the Class Period, Defendants and their co-conspirators entered into, and engaged in, the continuing unlawful trust in restraint of the trade and commerce described above in violation of Michigan Compiled Laws § 445.773, *et seq.*

95.    During the Class Period, Defendants and their co-conspirators entered into, and engaged in, the continuing unlawful trust in restraint of the trade and commerce described above in violation of Iowa Competition Law, Iowa Code § 553.1, *e. seq.*

96.    During the Class Period, Defendants and their co-conspirators entered into, and engaged in, the continuing unlawful trust in restraint of the trade and commerce described above in violation of North Carolina Gen. Stat. § 75-1, *et seq.*

97.    During the Class Period, Defendants and their co-conspirators entered into, and engaged in, the continuing unlawful trust in restraint of the trade and commerce described above in violation of West Virginia § 47-18-1, *et seq.*

98.    During the Class Period, Defendants and their co-conspirators entered into, and engaged in, the continuing unlawful trust in restraint of the trade and commerce described above in violation of Utah Code Ann. § 76-10-911, *et seq.*

99.    Defendants' violations of the above state antitrust laws consisted, without limitation, of a continuing unlawful trust and concert of action by, between and among Defendants and their co-conspirators, the substantial terms of which were to fix, raise, maintain and/or stabilize the prices of, and to allocate markets for, Filters.

100.    For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators accomplished the unlawful goals they combined and conspired to achieve including, without limitation, the acts, practices and course of conduct set forth above, as well as to:

a.    fix, raise, maintain and/or stabilize the price of Filters;

b.     allocate markets for Filters by, between and among themselves;

c.     submit rigged bids for the award and performance of certain Filters contracts; and

d.     allocate by, between and among themselves the production of Filters.

101.     Defendants' combination and conspiracy alleged herein has had (and continues to have), *inter alia,* the following effects:

a.     price competition for the sale of Filters has been restrained, suppressed and/or eliminated in Michigan, Iowa, North Carolina, West Virginia, Utah and throughout the United States;

b.     prices for Filters sold by Defendants and their co-conspirators have been fixed, raised, maintained and/or stabilized at artificially high, non-competitive levels in Michigan, Iowa, North Carolina, West Virginia, Utah and throughout the United States; and

c.     indirect and direct purchasers of Filters from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

102.     Plaintiffs and Class members in Michigan, Iowa, North Carolina, West Virginia and Utah paid supra-competitive, artificially inflated prices for Filters.  As a direct and proximate result of Defendants' unlawful conduct, Class members in Michigan, Iowa, North Carolina, West Virginia and Utah were (and continue to be) injured in their business and property in that they paid more for Filters than they otherwise would have paid absent Defendants' unlawful conduct.

103.     As a direct and proximate result of Defendants' violations of the statutes set forth above, Plaintiffs and the members of the Classes seek damages, reasonable attorneys' fees, litigation expenses and court costs under the applicable antitrust laws of Michigan, Iowa, North Carolina, West Virginia and Utah.

## COUNT III

## VIOLATION OF STATE CONSUMER
## PROTECTION AND UNFAIR COMPETITION LAWS

104.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

105.     Defendants engaged (and continue to engage) in the unfair competition and/or unfair, unconscionable, deceptive and/or fraudulent acts and practices described above in violation of the following state consumer protection and unfair competition statutes.

106.     Defendants engaged (and continue to engage) in the unfair competition and/or unfair, unconscionable, deceptive and/or fraudulent acts or practices described above in violation of Arkansas Code § 4-88-101, *et seq.*

107.     Defendants engaged (and continue to engage) in the unfair competition and/or unfair, unconscionable, deceptive and/or fraudulent acts or practices described above in violation of Michigan Compiled Laws §§ 445.901, *et seq.*

108.     Defendants engaged (and continue to engage) in the unfair competition and/or unfair, unconscionable, deceptive and/or fraudulent acts or practices described above in violation of Florida Stat. § 501.201, *et seq.*

109.     Defendants engaged (and continue to engage) in the unfair competition and/or unfair, unconscionable, deceptive and/or fraudulent acts or practices described above in violation of North Carolina Gen. Stat. § 75-1, *et seq.*

110.     Defendants engaged (and continue to engage) in the unfair competition and/or unfair, unconscionable, deceptive and/or fraudulent acts or practices described above in violation of Rhode Island General Laws § 6-13.1-1, *et seq.*

111.    Class members in Arkansas, Michigan, Florida, North Carolina and Rhode Island paid (and continue to pay) supra-competitive, artificially inflated prices for Filters. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and the members of these Classes in Arkansas, Michigan, Florida, North Carolina and Rhode Island have been (and continue to be) injured in their business and property in that they paid more for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

112.    As a result of Defendants' violations of the above consumer protection and unfair competition laws, the members of the Classes in Michigan, Arkansas, Florida, North Carolina and Rhode Island are entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits obtained by Defendants as a result of their unlawful business practices, as well as damages.

## COUNT IV

## <u>UNJUST ENRICHMENT AND DISGORGEMENT OF PROFITS</u>

113.    Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

114.    Defendants have been (and continue to be) unjustly enriched through overpayments by Plaintiffs and the members of the Classes defined above for Filters, and the resulting profits directly resulting from such overpayments. Plaintiffs' detriment and Defendants' enrichment were related to (and flowed from) Defendants' wrongful conduct alleged in this Complaint.

115.    Under the Michigan, Iowa, Arkansas, North Carolina, West Virginia, Utah, Rhode Island and Florida common law principles of unjust enrichment, Defendants should not be permitted to retain the financial benefits conferred upon them by the overpayments for Filters made to Defendants by Plaintiffs and the members of the Classes.

116.     Plaintiffs and the members of the Classes, therefore, seek disgorgement from Defendants of all profits resulting from such overpayments, as well as the establishment of a constructive trust from which Plaintiffs and the members of the Classes may seek restitution.

*          *          *

**WHEREFORE**, Plaintiffs, on behalf of themselves and all similarly situated members of the Classes defined above, respectfully request that this Court:

a.     certify this action as a class action pursuant to Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as the representatives of the defined Classes, and appoint Plaintiffs' counsel as Class Counsel;

b.     adjudge that the contract, combination or conspiracy, and the acts done in furtherance thereof by Defendants and their co-conspirators, are *per se* violations of Section 1 of the Sherman Act, 15 U.S.C. § 1;

c.     adjudge that Defendants' conduct violates the state antitrust laws listed above;

d.     adjudge that Defendants' conduct violates the state consumer protection and unfair competition laws listed above;

e.     permanently enjoin and restrain Defendants and their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf, from, in any manner:

i.     continuing, maintaining, or renewing the contract, combination, or conspiracy alleged herein, or from engaging in any other contract, combination, or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

ii.     communicating, or causing to communicate, to any other person engaged in the manufacture, distribution and/or sale of Filters information concerning prices, customers, markets and/or other terms or conditions of sale of any such products except to the extent necessary in connection with bona fide sales transactions between the parties to such communications.

f.     enter judgment for Plaintiffs and the members of the Classes defined above against Defendants for three (3) times the amount of damages sustained by Plaintiffs and the members of the Classes defined above as allowed by law, together with the costs of

this action, including reasonable attorneys' fees, litigation expenses and costs of court;

g.    award Plaintiffs and the members of the Classes defined above restitution, including disgorgement of profits obtained by Defendants as a result of their acts of unfair competition and acts of unjust enrichment;

h.    award Plaintiffs and the members of the Classes defined above pre-judgment and post-judgment interest at the highest legal rates from and after the date of service of this Complaint to the extent provided by law; and

i.    award Plaintiffs and the members of the Classes defined above such other and further relief that this Court deems just and proper.


## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs respectfully demand a trial by jury of all claims so triable.

Dated:  July 28, 2008

Respectfully submitted,


__ s/ John Wylie _____
Ronald L. Futterman, Esq.
Charles R. Watkins, Esq.
John R. Wylie, Esq.
William Thomas, Esq.
**FUTTERMAN HOWARD WATKINS
        WYLIE & ASHLEY, CHTD.**
122 S. Michigan Ave., Ste. 1850
Chicago, IL 60603
Phone:  (312) 427-3600
Fax:  (312) 427-1850

**OF COUNSEL:**

Richard L. Coffman, Esq.
**THE COFFMAN LAW FIRM**
First City Building
505 Orleans St., Ste. 505
Beaumont, TX 77701
Phone: (409) 833-7700
Fax:  (866) 835-8250

S. Thomas Wienner, Esq.
**WIENNER & GOULD, P.C.**
950 W. University Drive, Ste. 350
Rochester, MI 48307
Phone:  (248) 841-9400
Fax:  (248) 652-2729

Mart Vehik, Esq.
Will Crowder, Esq.
**MCMATH WOODS, P.A.**
711 West Third Street
Little Rock, AR 72201
Phone: (501) 396-5413
Fax: (501) 374-5118

Norman B. Smith, Esq.
**SMITH, JAMES, ROWLETT & COHEN, LLP**
101 South Elm Street, Ste. 310
Greensboro, NC 27402
Phone: (336) 274-2992
Fax: (336) 274-8490

Allan O. Walsh, Esq.
**McKAY, BURTON & THURMAN**
170 South Main Street, Ste. 800
Salt Lake City, UT  84101
Phone:  (801) 521-4135
Fax:  (801) 521-4252

Theodore Orson, Esq.
**ORSON AND BRUSINI, LTD.**
325 Angell Street
Providence, RI 02906
Tel. (401) 223-2100
Fax (401) 861 3103

Christopher T. McRae, Esq.
David J. Metcalf, Esq.
**MCRAE & METCALF, P.A.**
306 S. Plant Avenue
Tampa, Florida 33606
Phone: (813) 225-1125
Fax: (813) 225-1077